Ned WHITEHEAD, Appellant,

v.

John M. SHUGARS.

No. 02–3483.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) June 23, 2003.

Decided July 16, 2003.

Before SCIRICA, Chief Judge,
NYGAARD, and WEIS, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

In a bizarre set of facts, Appellant, Ned Whitehead, who did not seek office, was elected constable with a single write-in vote. Although he never assumed office, Pennsylvania through its Ethics Commission sought to have him file financial disclosures required for public officials. Whitehead informed the Commission's investigative counsel that he was not the constable and did not have to file the disclosure. The investigative counsel, John Shugars, nevertheless took the matter before the Commission. Because Whitehead did not participate in the Commission's proceedings, it found against him, imposed a fine and required that he file the disclosure. Shugars took the matter to the state court. Again because Whitehead did not participate, the court found against him. The state court found Whitehead in contempt for failure to comply with its order, and had Whitehead incarcerated. Whitehead then paid the fine and filed the disclosure.

Whitehead filed a § 1983 suit in federal court, which the District Court dismissed for lack of jurisdiction, finding that the *Rooker–Feldman* doctrine barred federal

review. Because the § 1983 suit is inextricably intertwined with the state court decision, we will affirm.

The District Court granted Shugar's motion to dismiss this case based on the *Rooker–Feldman* doctrine, with which we begin and end our analysis. "The *Rooker–Feldman* doctrine provides that federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.' " *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996). This holding has been extended to encompass final decisions of lower state courts. *Id.* The doctrine is limited and "the existence of a state court judgment in another case bars the federal proceeding under *Rooker–Feldman* only when entertaining the federal court claim would be the equivalent of an appellate review of that order." *Id.*

We have previously explained the analysis to follow in answering a *Rooker–Feldman* question. *See, e.g., Desi's Pizza v. Wilkes–Barre,* 321 F.3d 411 (3d Cir. 2003). *Rooker–Feldman* is implicated in two circumstances: when the claim was "actually litigated" and when the claim is "inextricably intertwined with the state adjudication." *Id.* at 419. As to "actually litigated," we are somewhat stymied in the review of this case because we were not provided with the actual judgments or notices from the Commonwealth Court. Because, however, the District Court did not base its decision on the "actually litigated" prong of the doctrine, and the parties do not argue it here, we too will focus our attention on whether this action is inextricably intertwined with the Commonwealth's decision.

There are two circumstances when an issue adjudicated by a state court is inextricably intertwined with a plaintiff's claim for federal relief: "(1) 'when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered' and (2) when 'the federal court must . . . take action that would render [the state court's] judgment ineffectual.' " *Desi's Pizza,* 321 F.3d at 420–21 (citing *FOCUS,* 75 F.3d at 840). *Rooker–Feldman* bars us from granting relief on Whitehead's federal claim if to do so we would have to conclude that the Commonwealth Court made an incorrect legal or factual determination. Here, there is no way to separate the federal proceedings from the state court rulings. To grant relief, we would have to conclude that the state court erroneously entered judgment against Whitehead and erroneously found him in contempt–rendering the Commonwealth's judgment ineffectual.

Turning to Whitehead's claims, the question is whether, if Whitehead was granted federal relief on his § 1983 claim, that relief would require us to overturn a legal or factual finding by the Commonwealth Court. The District Court here described the proceedings before the Commonwealth Court. Shugars filed a petition for restitution against Whitehead. The petition, the District Court noted, did not comport with the requirements of the Public Official and Employee Ethics Act and misstated Shugar's authority for seeking restitution. "[T]he petition for resitution was improper." *Whitehead v. Shugars,* Civil No.1:CV–02–0269, at 2 (Aug. 15, 2002). The timing and procedure of this action is unclear. Next, Shugars sought and received an entry of judgment for both $250 and an order that Whitehead file the financial disclosure. There is no discussion of the procedure or notification, but Whitehead did not comply, and the court found him in contempt.

Whitehead attempts to distinguish his case from those applying *Rooker–Feldman* by repeatedly citing his lack of participation in the state court proceedings. We addressed an analogous argument in *Guarino v. Larsen*, 11 F.3d 1151 (3d Cir. 1993). In *Guarino*, a senior judge on the Pennsylvania Court of Common Pleas challenged the Pennsylvania Supreme Court's actions in refusing to give him judicial assignments. The state Supreme Court had revoked Judge Guarino's assignments preemptively without a full hearing. Judge Guarino then filed an action in federal court challenging the court's actions. The Pennsylvania Supreme Court then issued an order directing Judge Guarino to show cause why its prior order should not remain in force. It is at this point that the cases become similar, because Judge Guarino ignored the Pennsylvania Supreme Court's order to show cause and proceeded only with his federal claim.

The issue of the federal plaintiff's ability to raise his constitutional claims in a state proceeding are similar. Judge Guarino was claiming that the state Supreme Court had unconstitutionally infringed on his property right in continuing his judicial duties and his liberty interest in his reputation. In reference to the fact that the Pennsylvania Supreme Court did not address his claims, this Court stated "while the Pennsylvania Supreme Court did not specifically address Judge Guarino's constitutional claims, by deciding that revocation of his assignment was solely within its discretion, the court decided that he had no property right to senior judge status under state law and in essence decided that its November order did not deprive Judge Guarino of "property" without due process of law. Because Judge Guarino's claim that he was deprived of property without due process of law was "inextricably intertwined" with his state law claim

that he has a property right to his position, the [court's] order essentially constitutes an adjudication of that constitutional claim." *Id.* at 1160. We noted that although there may be an argument that the Pennsylvania Supreme Court did not adjudicate the constitutional claims, "we hold that Judge Guarino waived this claim by failing to present it at the March show cause hearing." *Id.* We concluded:

Judge Guarino did waive his constitutional claims by failing to raise them, for he should have looked on the Pennsylvania Supreme Court's issuance of the show cause order as providing a chance for him to present his legal arguments even though it was not clear from the face of the order that such an opportunity would exist. When the "administrator" making a decision is a state supreme court and that state supreme court presents a litigant with an opportunity to present arguments to the court, it is reasonable for a party to expect that such a body will entertain constitutional challenges to its actions and to expect litigants to be on notice of this possibility, even if the state court seems to be acting in an administrative capacity.

*Id.* at 1161.

The same analysis is applicable here. "When a litigant fails to attempt to raise such claims, it is appropriate to presume that the state court would have been willing to decide his constitutional claims subject to rebuttal by clear evidence to the contrary." *Id.* There is no question that Whitehead could have challenged the petition for restitution. For example, in *Commonwealth v. Gray*, 6 Pa. D. & C.4th 504 (Pa. Court of Common Pleas 1989), the court of common pleas granted the defendant public official's motion opposing a Commission motion for restitution. It is clear that Whitehead *could* have chal-

lenged the Commission and Shugars' actions at several points.

Whitehead also argues that he is not challenging the actions of the Commonwealth Court. He is instead focusing on the point where Shugars "filed a Petition in the Commonwealth Court seeking, among other things, incarceration and civil penalties." App. Br. at 12. He ties this in with the alleged constitutional violation occurring in the investigative phase of this action – where Shugars learned that Whitehead was not constable, yet proceeded anyway. Whitehead distinguishes *Rooker–Feldman* based on his lack of participation in the proceedings. He argues that Shugars failed to follow the procedure for enforcing the Commissions ruling. Because Whitehead received no financial gain, the only enforcement mechanism, he argues, was for Shugars to proceed with criminal misdemeanor charges against Whitehead. Instead, Shugars followed the procedure for restitution where a public official has received compensation. Whitehead argues that it was this decision to proceed extralegally to obtain the funds that violated his civil rights. His ultimate argument is that the Commonwealth Court proceeded properly on the information improperly presented to it by Shugars. The question becomes, to what extent does Whitehead's collateral attack on Shugars' actions in federal court undermine the Commonwealth Court's decision?

The District Court found that the Commonwealth held that: 1) Whitehead had violated the Act and that the Commission was entitled to restitution; and 2) Whitehead was in contempt of the court's ruling. The District Court clearly explains its reasoning:

Despite Plaintiff's insistence that his complaint does not implicate the Commonwealth Court's decision, the court finds that the complaint and the state court action are inextricably intertwined. Although Plaintiff focuses his complaint on Defendant's actions, the alleged deprivation of his constitutional rights resulted from his incarceration and the payment of the civil penalty. These are actions which the Commonwealth Court took in response to Defendant's petition for restitution. Certainly, then, the act of filing the restitution petition and the court's subsequent actions are related. To establish his injury, Plaintiff would have to demonstrate that Defendant's violation of his constitutional rights caused an erroneous adverse decision by the Commonwealth Court. Moreover, the Commonwealth Court actually held that Plaintiff had obtained financial gain in violation of the Act. Thus, the court cannot grant Plaintiff relief without calling into question the validity of the state court's decision; a result prohibited by the *Rooker–Feldman* doctrine.

*Whitehead v. Shugars,* Civil No.1:CV–02–0269, at 7; Joint App. at 29a.

As the District Court noted, Whitehead can only win if he shows that the Shugars caused the state court to make an incorrect decision. Under both prongs of the analysis set out in *Desi's,* Whitehead's constitutional claims and the state court decision are inextricably intertwined. Therefore, the District Court will be affirmed.[1]

---

1. Although there is no relief for Whitehead in this forum, the allegations of misconduct raised by Whitehead are troubling. Our cases discussing prosecutorial immunity, an issue we need not reach in this case, note that such immunity does not leave citizens completely

without a remedy against abusive prosecution. Whitehead could have sought direct judicial review of the state court case, and professional disciplinary procedures exist. *See, e.g., Ernst v. Child & Youth Serv's,* 108 F.3d 486, 495 (3d Cir.1997) ("[A]bsolute immunity for prosecutors would not leave the public without any means to punish or deter

unconstitutional conduct because the availability of both judicial review and professional disciplinary procedures would protect the public and punish the errant prosecutor.").